69  683
80  108
69  683
88   8
69  683
f143  19

The Colfax Hotel Co. v. Lyon.

1. **Practice on Appeal:** RULINGS ADVERSE TO APPELLANT ALONE CONSIDERED. In an ordinary action, this court can review only such rulings of the trial court as were adverse to the appellant. Accordingly, where defendant, on three stated grounds, moved the court to direct a verdict for him, which motion the court overruled as to the first and third grounds, but sustained as to the second, and plaintiff alone appealed, *held* that, as the ruling of the court as to the sufficiency of the first and third grounds could not be reviewed, the judgment must be reversed if the ruling as to the sufficiency of the second ground was erroneous.

2. **Corporations**: PAROL AGREEMENT TO TAKE STOCK: VALIDITY. A parol agreement made with the directors of a corporation to take certain shares of the stock thereof will be enforced, when there is no provision in the charter of the corporation or in the laws of the state requiring such contracts to be in writing.

3. ———: ———: ACTION ON: EVIDENCE: DIRECTORS' MINUTES. In an action upon an agreement to take corporation stock, alleged to have been made at a meeting of the directors, the minutes of the meeting were admissible to prove the acceptance of the offer by the corporation, but not to prove that the offer was made by the other party; and it is immaterial that the direction to make the recital a part of the record was given at a subsequent meeting.

*Appeal from Polk Circuit Court.*

MONDAY, OCTOBER 25.

PLAINTIFF is a corporation, and it brought this action on an alleged contract by defendant to take and pay for fifteen shares of its capital stock. The verdict and judgment were for defendant. Plaintiff appeals.

*Cummins & Wright,* for appellant.

*Phillips & Day,* for appellee.

REED, J.—The plaintiff was incorporated on the eleventh day of June, 1884. Its articles of incorporation contain the following provision: "The capital stock of the organization hereby created is fixed at sixteen thousand dollars, divided into shares of one hundred dollars each, all of which has been subscribed for, and are payable at the call of the directors of said company, and as provided in said subscription." There were six incorporators, and, as we understand, those six persons had subscribed for all of the stock, but defendant was not of the number. It is alleged in the petition that on the twenty-third of July, 1884, defendant subscribed for and agreed to pay for fifteen shares of said capital stock, and that such subscription and agreement were made with the officers, directors and stockholders of the corporation, and at a meet-

ing of the corporation. Plaintiff proved on the trial that there was a meeting of the corporation on the twenty-third of July, and that two of the incorporators, at that meeting, desired to cancel their subscriptions to the stock, and that the other incorporators present consented that this might be done. Defendant and four others, who were not then members of the corporation, were present at the time, and, after it had been agreed that said cancellation should be made, there was some discussion as to the disposition which should be made of the stock covered by said subscriptions, and it was agreed that it should be taken by the five persons present who were not members of the corporation. Defendant stated that he would take fifteen shares, and directed the secretary to set him down for that amount. The secretary wrote down the names of each subscriber, with the amount of stock he agreed to take, on a slip of paper, but no formal subscription was signed by any of the parties. After this he was proceeding to fill out the stock certificates for the parties, but before they were completed defendant left the meeting, stating that he desired to go to Des Moines on a train that was then approaching, that being his place of residence, and the meeting being at Colfax. But before leaving he directed the secretary to take the certificates to Des Moines on the next day, and promised that he would then pay for them. On the next day the secretary went to Des Moines, but, being unable to see defendant, he inclosed the certificates in an envelope, and left them with another person who, by his direction, delivered them to defendant on the same day. On the next day he telegraphed defendant calling his attention to the matter, and in answer to the dispatch defendant wrote him stating that, owing to sickness in his family, he had not been able to give the matter attention; and that, as the other stockholders wanted the stock, he might let them have it, or, if this could not be done, he would have to wait until he could get round, and promising, if the stock was not otherwise disposed of, to give the matter attention the next week.

He also returned the certificates to the secretary inclosed with his letter. But he subsequently refused to receive the stock or pay for it.

When plaintiff's evidence was closed, counsel for defendant moved the court to direct the jury to return a verdict for him on substantially the following grounds: (1) That the allegation in the petition that defendant had subscribed for and agreed to pay for the stock is not supported by evidence of a parol agreement by him to take and pay for the same; (2) that the parol agreement to take and pay for the stock is invalid, and cannot be enforced; (3) that the articles of incorporation show that all the stock had been taken before the alleged agreement with defendant, and there was no competent evidence that any portion of it had been surrendered, or that the corporation could then enter into a valid agreement for the transfer of any portion of its stock to him. The court sustained the motion on the second ground, and overruled it as to the other grounds.

I. Counsel for appellee contend that the only question which arises under the appeal is as to the correctness of the ruling of the circuit court in directing the verdict for the defendant, and that the judgment ought not to be disturbed if the motion should have been sustained on any of the grounds alleged, regardless of whether the ruling was based upon those grounds or not. But we think this position cannot be maintained. The cause is an ordinary action, and we can review only such rulings of the trial court as were adverse to the appellant, and are properly assigned as errors. If, instead of moving the court to direct the verdict on the grounds alleged, counsel had asked the court to give the three propositions involved in their motion by way of instruction to the jury, and the court had given the one, and refused to give the others, they would hardly contend that the appeal brought up any questions for our consideration except such as related to the correctness of the instruction given. But,

1. PRACTICE on appeal: rulings adverse to appellant alone considered.

in effect, that is what was done. With either of the propositions given to the jury by way of instruction, a verdict for the defendant would, under the proof, have as certainly resulted as from a positive direction by the court. In effect, the court told the jury that the second proposition was the law of the case, and, as there was no controversy as to the facts, the verdict must be for defendant. The case, then, is in precisely the condition it would have been in if the proposition, instead of being incorporated in the motion, had been given as an instruction, and the jury, without an express direction from the court, had returned a verdict for defendant; and the only question we can consider on this branch of the case is as to the correctness of that proposition.

II. The agreement of defendant to take and pay for the stock was unconditional. He, in effect, directed the secretary to subscribe in his name for the amount of stock named, but no entry was in fact made in the stock-book or records of the corporation until after he had notified the officers of the company that he would not take or pay for the stock, so that the agreement of the parties rests entirely in parol; and the question is whether such agreement is valid and enforceable. It is said by Thompson, in his work on Liability of Stockholders, (§ 108,) that parol subscriptions for stock are not valid, and that contracts of that character can be proven only by written evidence. The following cases are cited in support of the text: *Pittsburg & S. R. Co. v. Gazzam*, 32 Pa. St., 340; *Vreeland v. New Jersey Stove Co.*, 29 N. J. Eq., 188; *Thames Tunnel Co. v. Sheldon*, 6 Barn. & C., 341; *Brouwer v. Appleby*, 1 Sandf., 170. And *Fanning v. Insurance Co.*, 37 Ohio St., 339, is cited by counsel as sustaining the same doctrine.

It is to be observed, however, that the holding in each of these cases is based very largely upon provisions of the charters of the corporations, or of some general statute governing the question. It is not claimed, however, that there

*(margin note: 2. CORPORATIONS: parol agreement to take stock: validity.)*

is any statute of this state which requires contracts of that character to be in writing, and we think there is no provision of plaintiff's articles of incorporation which has that effect.   The provision quoted above, which is the only one at all relating to the subject, simply recites that the stock has all been subscribed, and is payable at the call of the directors, as provided in the subscription.   It clearly does not create any limitation on the power of the corporation to contract for the disposal of its capital stock.  . When the articles of incorporation were adopted, it was not contemplated that the company would ever have occasion to contract for the disposal of any portion of its stock.   The stock had then all been subscribed for, and there was apparently no necessity for making any provision on the subject, and accordingly none was made.   The question presented by the case, then, is whether, in the absence of any provisions as to the manner in which such contracts shall be entered into either in the charter or the general statutes of the state, a corporation may contract by parol for the disposal of its capital stock.   In our opinion, it may.   There is nothing in the nature of the contract which requires it to be in writing.   For the purpose of effecting the object of its organization, the powers of the corporation, unless restricted by statute, are as broad as those of a natural person.   *Thompson v. Lambert*, 44 Iowa, 239.

There can be no doubt that, under our general statute governing the organization of such bodies, they may, by express provision of their articles of incorporation, clothe themselves with power to contract in that manner, or they might provide that they should be bound only when the contract was entered into in writing.   But when no provision or limitation on the subject is made, and the object is one concerning which they have power to contract, it follows necessarily, we think, that they may contract in either manner, as may be determined by the incorporators or directors.   The ability to do this is necessarily incident to the powers with which they are vested under the law.   We think, therefore, that the cir-

cuit court erred in the ruling that the contract in question was void.

III.   On the trial the plaintiff offered in evidence the record of the proceedings had at the meeting at which the con-

3. ——: ——: tract was entered into. But, on defendant's
action on: evidence: objection, it was excluded. This record shows
directors' minutes. that certain of the officers who had previously been elected tendered their resignations, and that these were accepted; also the election of other of the stockholders to those offices. It also contains the following recital: "The stock was then all subscribed for, and the secretary instructed to issue accordingly. This subscription was made by the parties, or by their written order, and was taken and written down by the secretary by their direction and order, as follows." And this is followed by a list of the subscribers, with a statement of the amount of stock taken by each. This recital was not entered on the record at the time it was originally written by the secretary; but at a subsequent meeting of the corporation he was directed to enter it in the record of the meeting in question. A number of meetings, however, intervened between that one and the one at which the direction was made. This record was probably not competent evidence of an agreement by defendant to become a shareholder. He denied, in his answer, that he had made the agreement alleged, and he had no part in making the record. He could not, therefore, be bound by its recitals as to his agreement. But the burden was on plaintiff to prove its acceptance of whatever proposition or offer he had made at the meeting to take the stock; and the record was competent evidence to show acceptance, and it should have been admitted for that purpose. It is immaterial, we think, that the direction to make the recital a part of the record was made at a subsequent meeting. Plaintiff had the right, at any time, to correct its record in accordance with the facts. The judgment will be reversed, and the cause remanded for a new trial.

REVERSED.